UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PAULA KASTERAN, Plaintiff | ) | 4:19-cv-25-BO |
| VS. | ) | |
| | ) | |
| THOMAS ANGIER STOKES III, SGT. | | COMPLAINT |
| SHARON DURHAM CULPEPPER, LEIGH | ) | FILED |
| HINES BAKER, MARK ALAN REID, | | |
| Defendants | ) | FEB 19 2019 |
| | | PETER A. MOORE, JR., CLERK |
| | | US DISTRICT COURT, EDNC |
| | | BY _____ DEP CLK |

## PARTIES

1. **PLAINTIFF: Paula Kasteran**, (hereinafter "Plaintiff") is of full age and a current resident of Ocean View, Delaware. At all times relevant herein, Plaintiff was acting within the laws of the State of North Carolina. Plaintiff is filing this action Pro se.
2. Defendant **Thomas Angier "Skip" Stokes III,** (hereinafter "Defendant Stokes"), is of full age and at all times relevant herein, a resident of the State of North Carolina residing at 221 Valley Lane, Pittsboro, 27312, Chatham County. He is sued jointly, severally and in the alternative.
3. Defendant **Sgt. Sharon Durham Culpepper** (hereinafter "Sgt. Culpepper"), is of full age and a resident of North Carolina. At all times relevant herein Defendant Culpepper was acting as agent, servant and employee of the Atlantic Beach Police Department in Atlantic Beach, NC. She is sued jointly, severally and in the alternative.
4. Defendant **Mark Alan Reid** (hereinafter "Defendant Reid") is of full age and a resident of North Carolina. At all tines relevant herein Defendant Reid was acting as agent, servant and employee of the Atlantic Beach Police Department, above. Defendant Reid is sued jointly, severally and in the alternative.
5. Defendant **Leigh Hines Baker** (hereinafter "Defendant Baker") is of full age and at all times relevant herein, a resident of North Carolina, residing at 2600 Evans Street, Morehead City, NC 28557. Defendant Baker is sued jointly, severally and in the alternative.

Pg. 1

## COMPLAINT

By way of complaint, Plaintiff hereby states:

6. On February 19, 2017, on the beach strand in Atlantic Beach, North Carolina, there was a short dog fight between Plaintiff's dog (a yellow Labrador Retriever named "Joel") and Defendant Stokes' dog. Defendant Stokes quickly broke up the fight by grabbing Plaintiff's dog's head and twisting it side to side. Although the fight ended and Plaintiff's dog was now going away from Defendant Stokes and his dog, and Plaintiff was still holding the leash, Stokes went after Plaintiff's dog and kicked him in the rib cage, causing Plaintiff's dog to yelp in pain and causing injury.

7. Defendant Stokes continued to go after Plaintiff's retreating dog (hereinafter "Joel") and picked him up by his head (grabbing both sides of the head) and raised him up several feet off the ground. Stokes then flipped Joel's body around like a rag doll, attempting to break Joel's neck and putting a tremendous strain on Joel's neck. Defendant Stokes then slammed Joel onto the beach with great force at the waterline.

8. Defendant immediately fell onto Joel with great force, causing Joel to be crushed beneath him and consternation in Plaintiff, who was scared Joel was further injured internally. Defendant hit his face on the top of Joel's head when he fell onto the dog.

9. Plaintiff pulled on her leash to try to get Joel away from Defendant Stokes, who was in a rage, but Stokes grabbed said leash and pulled it towards him. Stokes then got up and held onto Joel by the loose skin on the sides of his neck and his choke collar, and raised Joel up on his hind legs, pulling forcefully on Joel's neck.

10. Plaintiff and Defendant Stokes then walked towards each other with Stokes holding Joel up on his hind legs and choking him as he walked.

11. Plaintiff stood within 9 inches of Defendant Stokes and Joel and retracted her retractable leash to about six inches in length, and locked it. Plaintiff told Stokes, "I've got him – let go of him!"

12. To Plaintiff's Surprise and concern, she saw Defendant Stokes tighten his fists and choke Joel harder. Plaintiff said again, "Let go of him – I've got him!" Stokes again refused to release plaintiff's dog to her.

13. Plaintiff finally screamed at Defendant Stokes, "Let go of him!" But Stokes continued to choke Joel.

14. Plaintiff, out of desperation and fear for her best pal, then swung her right arm and hit Defendant Stokes on the back side of his left jaw with her fist. Defendant Stokes only then released Joel to Plaintiff.
15. Defendant Stokes then called Plaintiff "a bitch", a sexually offensive word to Plaintiff.
16. After a brief exchange of words between Plaintiff and Defendant Stokes, Plaintiff asked Defendant Leigh Hines Baker, who had been holding Stokes' dog on her leash the entire time of the above events, is her dog was OK. Defendant Baker said she thought so, but wasn't sure.
17. Defendant Stokes stepped towards Plaintiff, raised his fist, and said to Plaintiff, "I'll hit you." Defendant Baker stepped partly between Plaintiff and Defendant Stokes and told him, "Don't do it – you'll get assault on a female". Stokes then took another step towards Plaintiff with his fist raised, saying "I'll hit you" again to Plaintiff. Defendant Baker again told Stokes, "You'll get assault on a female".
18. Defendant Baker then called the local police.
19. After the above, while all parties were waiting for the police, Defendant Stokes held up Plaintiff's cell phone and asked if it was hers. Plaintiff said yes then reached for the phone, but Stokes held it up out of Plaintiff's reach and refused to give it to her. Plaintiff asked for her phone several times but was refused. Defendant Stokes is six feet tall and muscular; Plaintiff is 5 feet 2 inches tall and was 70 years old.
20. Plaintiff grabbed the front of Stokes' shirt and held on with her right hand while holding Joel's leash with her left hand, demanding her phone be returned to her.
21. When Defendant policewoman Sgt. Sharon Durham Culpepper arrived at the scene, she ordered Defendant Stokes to give Plaintiff her phone. The parties were then separated and individually interviewed.
22. Defendants Stokes and Baker made a false report to Defendant Culpepper accusing Plaintiff of hitting Defendant Stokes in his mouth and causing injury, and of breaking his eyeglass frame. Stokes was not wearing eyeglasses when Plaintiff hit him.
23. Plaintiff found an injury on Joel's ribs that same evening. Plaintiff took Joel to Banfield Veterinarians where an extensive exam was done.
24. Plaintiff was forced to come to court repeatedly to answer Defendant Stokes false charges. On March 15, 2017, at the parties' first appearance in Carteret County District Court, Judge McFaddyn asked Defendant Stokes if Defendant Baker was his wife: Stokes answered yes

and Baker nodded her head in the affirmative. Plaintiff, having read the redacted police report, on a hunch told Judge McFaddyn, "Your Honor – they're not married". At this revelation of the Truth, Stokes became very angry and demanded that Plaintiff not be allowed to come near them.

25. Judge McFaddyn then issued an order to Plaintiff to not go near the two Defendants. Plaintiff agreed, and never saw Stokes and Baker anywhere except in court.

26. Plaintiff, after being stymied by Carteret County District Court, finally was allowed to file her two true criminal charges against Defendant Stokes with the Magistrate's office. Defendant Stokes was served with Plaintiff's criminal charges of "Animal Cruelty" (on Joel) and "Threatening", on May 17, 2017. The cases were continued by the Court.

27. On May 18, 2017, Plaintiff and Joel were accosted by two Morehead City policemen as she left the Crystal Coast shopping Center, where she had shopped at Bed, Bath and Beyond, and was yelled at by the white male cop about her dog. Plaintiff had done nothing wrong. Plaintiff had to show the policemen the merchandise she bought and the receipt with the time and date on it.

28. Plaintiff was detained and interrogated solely on the basis of Defendant Stokes' false report to the Morehead City Police.

29. Plaintiff, upset at Defendant Stokes' harassment, went into District Court the next morning, May 19, 2017, and waited patiently to speak to Judge McFaddyn, complaining about Defendant Stokes' using the police to harass her.

30. To Plaintiff's amazement, Defendant Stokes had called the Court and lied to Judge McFaddyn about Plaintiff, saying she had violated the order to stay away from him and she had followed him around the store the day before. Plaintiff begged Judge McFaddyn to let her obtain the film from Bed, Bath and Beyond to show she had never seen Defendant Stokes on May 18th, but McFaddyn instead threw Plaintiff in jail on no bond.

31. Plaintiff's dog Joel was locked in her house with no feed, no way to go outside and relieve himself, and just enough water for one day. Joel suffered for 3 ½ days this way.

32. Plaintiff, desperate to help her dog, refused all food and drink, telling the jail Nurse what happened and that she must call someone to save Joel; and that in a couple more days the jail

Pg. 4

medical department would have to take her to the hospital and hydrate her intravenously, causing a big bill.

33. On the night of the third day of Plaintiff's incarceration, the Nurse and a Sergeant jail guard came and took Plaintiff to get her cell phone. Plaintiff then called a neighbor and instructed him to break a window of her house to rescue Joel.

34. On the seventh day of her incarceration Plaintiff obtained a temporary lawyer who got her out of jail. The county prosecutor had learned Plaintiff was a property owner and taxpayer in Carteret County. Plaintiff was forced to wear an ankle monitor and was harassed and embarrassed everywhere she went including at her boating class.

35. Despite the explanation to Plaintiff by law enforcement officials that said monitor would keep Plaintiff away from Defendant Stokes, Plaintiff was not allowed to go home to Delaware, where she would be 400 miles away from Defendant Stokes!

36. Defendants Mark Reid and Sgt. Sharon Culpepper both lied under oath in Carteret County District Court in June, 2017 and again in Carteret County Superior Court on or about January 11, 2018, making false accusations against Plaintiff.

37. Defendant Reid deliberately wrote false information about Plaintiff on the Atlantic Beach report he authored, writing that Plaintiff's height and weight were 5 feet 5 inches tall and 140 pounds, when Plaintiff told him in response to his questions, on February 19, 2017, that she was 5 feet 2 inches tall and weighed 125 pounds. Making Plaintiff appear to be larger than she is goes against Plaintiff for the assault charge filed against her.

38. Defendant Sgt. Culpepper did not talk to Plaintiff about, nor ask Plaintiff anything about, Defendant Stokes' eyeglasses damage.

39. Plaintiff sustained damages to her house of $230.00 because of Stokes' false accusations against her to the Court on or about May 19, 2017.

40. Plaintiff has been forced to spend, plus has lost, a total of $15,000.00 directly because of the deliberate wrong doing by all of the Defendants.

41. Plaintiff has been badly traumatized by the deliberate malicious acts of the defendants, led by Defendant Stokes, and especially by Defendant Stokes' false report to the Court on May 19, 2017.

Pg. 5

Because of the above acts, omissions, deliberate and inadvertent negligence, slander, conspiracy to commit false reports and willful malicious criminal Perjury, Plaintiff has been injured, and suffers to this day from the physical, emotional and psychological wounds as well as a diminished reputation among the community and her associations and financial loss.

Plaintiff has suffered from, and has been forced to take medicine for, depression since her incarceration on May 19, 2017; and has been terribly traumatized by the disgraceful experience of being thrown in jail for just innocently shopping at a shopping center.

Plaintiff's Labrador Retriever, Joel, a very intelligent, trained, registered service dog, has also suffered fear, anxiety and upset.

Wherefore, Plaintiff demands the following from this Honorable Court

1. The sum of $300,000.00 for pain, suffering, slander, reduction of Plaintiff in the eyes of the community, the black mark on Plaintiff's arrest record: financial losses and expenditures caused to Plaintiff, and the violation of Civil and Constitutional Rights of the Plaintiff.

## CERTIFICATION

I, the Plaintiff, hereby certify that the foregoing statements made by me are true and correct to the best of my knowledge and belief. I am aware that if any of the foregoing certified statements made by me are willfully false, I am subject to punishment.

Dated: February 17, 2019   By: *Paula Kasteran*

Paula Kasteran, Plaintiff Pro Se